IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARL V. CLARK** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-3054 |
| | : | |
| **CORRECTIONAL OFFICER** | : | |
| **CAMPER, BERKS COUNTY JAIL** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                    **April 5, 2023**

### I. Introduction

Carl Clark sued Berks County Jail and several correctional officers pro se for violating his constitutional rights.  Berks County Jail and the officers moved to dismiss his complaint, arguing Mr. Clark cannot state a viable claim for relief.  We grant their motion without prejudice for three reasons.  First, Mr. Clark cannot sue Berks County Jail for violating 42 U.S.C. § 1983 because a jail is not a person.  Second, the Prison Rape Elimination Act is not the basis for a lawsuit.  Third, Mr. Clark does not state a plausible constitutional violation against any of the at-issue correctional officers.  Nevertheless, we grant Mr. Clark leave to amend his complaint.  No later than **May 22, 2023**, Mr. Clark may state a plausible claim, if the facts allow him to do so.

Mr. Clark filed a few other motions that are currently pending.  Because we grant Mr. Clark leave to amend his complaint, we deny as moot Mr. Clark's motions for injunctive relief and default judgment.  We also deny Mr. Clark's motion to stay because he has not sufficiently shown that inequity would result from proceeding with the case.

Mr. Clark also asks us to appoint him counsel.  We deny Mr. Clark's request because he does not state a plausible claim with merit.

II.     **Factual Allegations**

In June 2020, the Berks County District Attorney's office charged Carl Clark with three felonies,[1] two misdemeanors,[2] and one summary offense.[3] DI 3-1.[4] Mr. Clark was imprisoned in November 2020 after failing to post a modified bail. *Id.*

About two months later, Mr. Clark was moved from jail to Reading Hospital. DI 1-5 at 4. Reading Hospital placed him in its trauma unit. *Id.* Correctional Officer Gregory Camper was with Mr. Clark at the hospital. *Id.*

In the trauma unit, a nurse's aide prepared to give Mr. Clark a sponge bath. *Id.* Just before the bath, Mr. Clark turned his back to Officer Camper and removed his clothing. *Id.* Officer Camper stood from his seat after Mr. Clark turned his back to him and circled around to Mr. Clark's front body. *Id.* Officer Camper's actions made Mr. Clark feel "very uncomfortable and violated." *Id.* The nurse's aide — present throughout the chain of events — "looked puzzled" at Officer Camper's behavior. *Id.*

From the hospital's trauma unit, Mr. Clark moved to Reading Rehab Center. *Id.* at 5. In

---

[1] 18 Pa. C.S.A. §§ 3301(a)(1)(ii) (arson endangering persons), 3301(f) (possession of explosive or incendiary materials or devices), 3304(a)(1) (criminal mischief).

[2] 18 Pa. C.S.A. §§ 7306(a)(1) (incendiary devices), 907(a) (possessing instrument of crime).

[3] 18 Pa. C.S.A. § 3503(b.1) (criminal trespass / simple trespass).

[4] "Docket entries in a criminal proceeding are public records, of which [we] take[] judicial notice." *Peterson v. Pitts*, 2019 WL 3836497, at *1 n.2 (E.D. Pa. Aug. 14, 2019) (citing *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005)).

the rehab center, a correctional officer named Cooper[5] watched over Mr. Clark.  *Id.*  Officer Cooper told nurses that Mr. Clark did not need a shower, coffee, or soda.  *Id.*  Officer Cooper did things to make Mr. Clark feel uncomfortable, such as preventing him from using his television.  *Id.*

Correctional Officer Joseph Diaz helped Officer Cooper supervise Mr. Clark at the rehab center.  *Id.*  Like Officer Cooper, Officer Diaz tried stopping Mr. Clark from having a coffee by occasionally throwing it away.  *Id.*  Officer Diaz made crude remarks to Mr. Clark, for example, telling him that "someone with a small pecker doesn't need coffee."  *Id.*

Mr. Clark returned to Berks County Jail on or around February 25, 2021.  *Id.*  Upon arrival, the jail placed him in solitary confinement.  *Id.* at 6.  He received a "turtle suit" to wear, but was not given a toothbrush, toothpaste, soap, coffee, or other clothes.  *Id.* at 5.  He stayed in Berks County Jail for an additional fourteen days.  *Id.* at 6.

Mr. Clark reported these events to Correctional Officer Christa Parrish.  *Id.*  In mid-April 2021, Mr. Clark again recounted these events to Correctional Officer Captain Miguel Castro.  *Id.*  Mr. Clark's conversation with Captain Castro happened after a jury found Mr. Clark guilty of the criminal charges against him.  *Id.*; DI 3-1.

### III.   Pending Motions

#### A.   Defendants' Motion to Dismiss

Mr. Clark alleges that Officers Camper, Diaz, Parrish, and Captain Castro violated his constitutional rights.  DI 1-5 at 6.  Mr. Clark argues that the allegations illustrate the cruel and unusual punishment he suffered while detained before his trial.  *Id.*  He seeks $250,000 in

---

[5] Mr. Clark does not name Officer Cooper as a defendant.  *See* DI 3-3 at 2 n.2.

3

damages. *Id.*

Berks County Jail and the correctional officers fairly read Mr. Clark's complaint as alleging constitutional violations under 42 U.S.C. § 1983. *See generally* DI 3-3. They make several arguments favoring dismissal. First, that Mr. Clark cannot sue Berks County Jail under § 1983 because it is not a "person." *See id.* at 5-6. Second, that Mr. Clark cannot sue someone under the Prison Rape Elimination Act (PREA). *Id.* at 6. Third, that Mr. Clark did not plausibly allege a constitutional violation. *Id.* at 6-9.

Mr. Clark opposes and "disputes" the defendants' motion. DI 11 ¶ 2. But in his opposition, Mr. Clark turns his focus to how (and when) he has received defendants' court filings. *See generally id.* He argues he did not receive defendants' filings in a timely fashion, which caused his delayed response to defendants' motion. *Id.* at 1. He cites to his motion to stay (DI 8)[6] and insists defendants' counsel is responsible for the timing and manner in which he has received court filings. *Id.* He argues that defendants know they are responsible for the dilatory mail and are trying to shift blame onto him. *Id.* at 1, 2.

Defendants' response to Mr. Clark's opposition details the steps taken to properly mail filings to Mr. Clark. *See* DI 12. Defendants argue they mailed all previous filings to Mr. Clark's

---

[6] Mr. Clark wants his case stayed and gives four reasons in support: (1) he is legally blind and struggles researching or filing documents; (2) he is trying to obtain counsel; (3) his receipt of court filings has been delayed; and (4) he "anticipates release on parole in the near future, and believes that he would be much better suited to pursue this matter once he is released." DI 8.

Mr. Clark separately filed two exhibits with his motion. *See* DI 9. One is a three-page document summarizing Mr. Clark's August 10, 2020 eye exam performed by Dr. Dawn Hornberger. *See id.* at 2. In an addendum to the summary, Dr. Hornberger states that Mr. Clark "has been legally blind for over 30 years." *Id.* at 4. The other exhibit is an "Inmate Correspondence History" chart showing that the correctional facility's mail room rejected documents sent by counsel for defendants to Mr. Clark. *Id.* at 5.

new address once they learned his address changed.  *Id.* at 4-6.  They contend that they served Mr. Clark in accordance with the Department of Corrections' procedures for the Smart Communications prison mail system.  *Id.* at 6-8.  They argue Mr. Clark has ignored the mail he has received.  *Id.* at 8.

### B. Mr. Clark's Motion for Appointment of Counsel

Mr. Clark's motion requesting appointment of a lawyer cites to an August 10, 2020 letter from Dr. Dawn Hornberger, an optometrist.  *See* DI 13 ¶ 3.  Mr. Clark filed Dr. Hornberger's letter along with his motion to stay.  *See* DI 9.  Dr. Hornberger's letter supports Mr. Clark's contention that he is legally blind, thus, he cannot "research, present or litigate his own case, due to his disability."  DI 13 ¶ 5 (citing *Parham v. Johnson*, 126 F.3d 454 (3d Cir. 1997)).  He argues having counsel will help him pursue his claims, especially because of his difficulty seeing.

## IV. Standard Of Review

### A. Defendants' Motion to Dismiss

We will use the Third Circuit's three-step test to analyze Mr. Clark's motion to dismiss.  Step one is "not[ing] . . . the elements a plaintiff must plead to state a claim."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Step two is "disregard[ing] legal conclusions and recitals of the elements of the cause of action supported by mere conclusory statements."  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).  Step three is deciding whether the remaining allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 675.  We construe Mr. Clark's pro se allegations liberally.  *See Islaam v. Kubicki*, 838 F. App'x 657, 659 (3d Cir. 2020).  We are especially

conscious of the duty to read Mr. Clark's complaint liberally because he is imprisoned. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### B. Mr. Clark's Motion for Appointment of Counsel

Congress enables courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). To help district courts decide whether to appoint counsel, the Third Circuit set out "non-exhaustive factors" for consideration in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). We consider

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses; [and]
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019) (alteration in original) (quoting *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)). The plaintiff's ability to present his or her case is the threshold inquiry, so the analysis divides into two steps. *Id.*

### V. Analysis

#### A. We grant defendants' motion to dismiss without prejudice because Mr. Clark has not stated a plausible claim for relief.

1. Mr. Clark cannot sue Berks County Jail under § 1983 because the jail is not a "person."

Congress allows lawsuits against a person or persons — "acting under color of law" — who deprive individuals of their constitutional rights. *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citing 42 U.S.C. § 1983). "[T]he law of the state where the court is located" dictates whether a party can be sued, more specifically, whether a party qualifies as a "person" under

6

§ 1983.  Fed. R. Civ. P. 17(b)(3).  Guided by this standard, the Third Circuit has routinely affirmed dismissals of complaints against prisons because they are not "persons" under § 1983.  *See, e.g.*, *Adams v. Hunsberger*, 262 F. App'x 478, 481 (3d Cir. 2008) (affirming district court's conclusion that correction facility is not a person under § 1983); *Brownlee v. Monroe Cnty. Corr. Facility*, 816 F. App'x 622, 625 (3d Cir. 2020) (same); *Crawford v. McMillan*, 660 F. App'x 113, 116 (3d Cir. 2016) (same); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (same); *see also Johnakin v. Berks Cnty. Jail Sys.*, 2018 WL 2352510, at *3 (E.D. Pa. May 21, 2018) (dismissing pretrial detainee's § 1983 claim against Berks County Jail system because it is not a "person").

Like the pretrial detainee in *Johnakin*, Mr. Clark cannot sue Berks County Jail for violating § 1983.  We follow the well-established guidance from the Third Circuit and dismiss Mr. Clark's claims against the jail.

   2. <u>Mr. Clark does not allege facts plausibly showing an unreasonable intrusion of his privacy by Officer Camper.</u>

The Fourth Amendment's privacy protections for individuals are incorporated through the Fourteenth Amendment; these protections guard against unconstitutional searches and seizures by state officials.  *See Parkell v. Danberg*, 833 F.3d 313, 324 n.6 (3d Cir. 2016).  But the Third Circuit has said that an individual's Fourth Amendment right "to be free from unreasonable searches[] is fundamentally inconsistent with incarceration."  *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).  An incarcerated individual has "a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting."  *Parkell*, 833 F.3d at 325.

The reasonableness of an intrusion "must be determined by balancing the need for the search against the invasion of personal rights, as revealed by four factors: 'the scope of the

7

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Gray v. Gilmore*, 2019 WL 4143426, at *3 (W.D. Pa. June 20, 2019) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). For example, "[t]he Supreme Court has held that prison officials may conduct visual body cavity searches in a reasonable manner." *Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (citing *Bell*, 441 U.S. at 559-60).

Here, Mr. Clark's allegations that Officer Camper watched his front body during a sponge bath do not constitute a Fourth Amendment violation for two reasons. First, Mr. Clark does not allege that the reason he removed his clothing was for Officer Camper to search him. He removed his clothes for a sponge bath. Second, Mr. Clark does not claim that Officer Camper's conduct involved, for example, a search of a body cavity. The scope of the alleged intrusion is much less than searches that the Supreme Court and Third Circuit have held are constitutional — provided that the searches are conducted in a reasonable manner. Therefore, Mr. Clark has not plausibly alleged a violation of his privacy rights.

3. <u>Mr. Clark cannot sue a correctional officer under PREA because the law does not give individuals a private cause of action.</u>

Courts in this district regularly dismiss claims based on PREA violations because "nothing in the language of the statute establishes a private right of action." *White v. Massini*, 2022 WL 1103793, at *2 (E.D. Pa. Apr. 13, 2022) (quoting *Walsh v. N.J. Dep't of Corr.*, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017)); *see also Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (affirming district court's decision denying dismissal of PREA claim because prisoner "failed to identify a private right of action for either"); *Johnakin v. Drosdak*, 2022 WL 2651969, at *5 (E.D. Pa. July 8, 2022) (holding prisoner "cannot 'bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an]

8

attempt to enforce the [institution's] PREA policy via section 1983" (alterations in original) (quoting *Bowens v. Emps. of the Dep't of Corr.*, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016))).

The law is clear that Mr. Clark cannot pursue a claim premised on an alleged PREA violation. We dismiss his claim to the extent he relies on PREA. If Mr. Clark amends his complaint, he may not state a claim for relief under PREA.

> 4. Mr. Clark does not allege sufficient facts showing that any of the correctional officers subjected him to cruel and unusual punishment.

The Third Circuit has stated the same "standard for violations of the Eighth Amendment based on nonmedical conditions of confinement . . . would also apply to . . . pretrial detainees through the Due Process Clause." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993). For a pretrial detainee to state an Eighth Amendment conditions-of-confinement claim, he or she must "allege facts showing (1) the deprivation he endured was 'sufficiently serious,' and (2) the prison officials had 'a sufficiently culpable state of mind.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas*, 948 F.3d at 138). Restated, "[a]n inmate seeking to prove that she has been subjected to an Eighth Amendment violation therefore must make both an ***objective*** and a ***subjective*** showing to impose liability on a defendant." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 226 (3d Cir. 2015) (emphasis added).

An objective showing of unconstitutional conditions of confinement "is adequately pled when the allegations depict conditions where the inmate is denied 'the minimal civilized measure of life's necessities.'" *Clark*, 55 F.4th at 179 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). This means "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

For example, the Third Circuit has said that the "minimal necessities" a pretrial detainee can be deprived of "include provision for basic hygiene." *Watson v. Sec'y Pa. Dep't of Corrs.*, 567 F. App'x 75, 79 (3d Cir. 2014). In *Watson*, the Third Circuit affirmed the district court's conclusion that a prisoner who "periodically receive[d] toothpaste from other inmates . . . sometimes [went] days without toothpaste, . . . [was] able to shave once a month and . . . receive[d] two small bars of soap once a week" did not establish an objective showing of an Eighth Amendment violation. *Id.* Initially, the prisoner's Eighth Amendment claims survived the correctional officers' motion to dismiss. *Id.* at 77. The prisoner alleged two officers "denied him personal hygiene products . . . in retaliation for" a sexual molestation lawsuit he had previously filed against prison officials. *Watson v. Wetzel*, 2013 WL 501376, at *1 (W.D. Pa. Jan. 9, 2013). The district court noted that the prisoner stated a plausible claim "[n]otwithstanding that [the prison officials] did not address [the prisoner's] Eighth Amendment claim in their motion to dismiss." *Id.* at *9. But on summary judgment, the Third Circuit concluded the prisoner could not demonstrate a genuine issue of material fact as to the objective or subjective components of his Eighth Amendment claim. *Watson*, 567 F. App'x at 80.

The court in *Mayo v. Correctional Officer Finley* similarly decided whether a deprivation of hygiene products rose to the level of an Eighth Amendment violation. 2017 WL 2937965 (W.D. Pa. Mar. 24, 2017). In *Mayo*, a pro se prisoner accused correctional officers of causing him to go "without any toothpaste, toothbrush, soap, washcloth or any of the other hygienic items that inmates have . . . for fourteen days." *Id.* at *3. The court held that the "limited number of days" without the products "does not violate the Eighth Amendment." *Id.* The court further concluded the prisoner did not allege any serious risk of harm resulting from the

10

allegation deprivation. *Id.*

The Third Circuit has also considered the length of time an incarcerated individual was allegedly deprived of constitutional conditions when deciding whether an objective, "sufficiently serious" violation occurred. *See, e.g.*, *Thomas*, 948 F.3d at 139-40 (denying summary judgment where correctional officers failed to abide by prison regulations by keeping a prisoner in a solitary confinement dry cell for five additional days); *cf. Washington v. Anna*, 2022 WL 17823680, at *3 (M.D. Pa. Dec. 20, 2022) (dismissing prisoner's Eighth Amendment claim in part because prisoner spent only one day in a cell without a mattress and with excrement on walls and toilet).

Construing Mr. Clark's complaint liberally, we start by reviewing his allegations arising from his time at Reading Rehab Center. His alleged inability to have coffee or watch television while at the rehab center does not amount to unconstitutional conditions of confinement. And Officer's Diaz's "rude comments" cannot form the basis of a plausible constitutional claim. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment.").

We turn next to Mr. Clark's allegations regarding the fourteen-day stretch of winter where he "was deprived of soap, toothpaste, and toothbrush, coffee and clothes" in a cell by himself. DI 1-5 at 5. Mr. Clark's allegation that the correctional officers deprived him of clothing is insufficiently serious because Mr. Clark also says he wore a "turtle suit," so he was not without clothing. Further, Mr. Clark's coffee deprivation for a second time does not amount to a sufficiently serious deprivation of his constitutional rights.

We need not decide at this stage whether Mr. Clark's allegations regarding the lack of

soap, toothpaste, and toothbrush in solitary confinement for fourteen days meet the pleading standard required to establish the objective component of an Eighth Amendment violation. The problem is that Mr. Clark did not allege that *any* correctional officer acted with deliberate indifference during his fourteen days in solitary confinement. That is, Mr. Clark did not say — or allow us to infer — that a particular correctional officer "knew of and disregarded [the] constitutional violations." *Thomas*, 948 F.3d at 138. Critically, a prison official "must both be aware of facts from which he could infer that a substantial risk of serious harm exists, and he must draw that inference." *Green v. Ferdarko*, 2017 WL 9285187, at *9 (W.D. Pa. Dec. 6, 2017).

Here, Mr. Clark does not allege whether Officers Camper, Cooper (who is not a named defendant), or Diaz made sure that he did not receive a toothbrush, toothpaste, or soap. Mr. Clark does not allege which officer, if any, took actions while he was in solitary confinement that caused him to suffer cruel and unusual punishment. Further, Mr. Clark does not say whether any particular correctional officer knew — and disregarded — that he went without personal hygiene items for fourteen days. We must hold that Mr. Clark fails to state a claim for cruel and unusual punishment.

> 5. Mr. Clark fails to plausibly allege that Officer Parrish and Captain Castro acquiesced in any alleged misconduct.

A prisoner must allege "personal involvement in the alleged deprivation of [a prisoner's] constitutional right[s]" to state a plausible claim. *Wilson v. Kaufman*, 2023 WL 1819162, at *5 (M.D. Pa. Feb. 8, 2023); *see Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). The Third Circuit has explained that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207

12

(3d Cir. 1988). Applying this rule, the Third Circuit has held a prison official's response to a prisoner's grievances, without "allegations linking them to the underlying incidents," provides "no basis for liability" against the official. *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018).

Here, Mr. Clark does not allege any approval of unconstitutional conduct — let alone personal involvement — by Officer Parrish. Even though Mr. Clark "reported to" Officer Parrish "several times," there are no allegations suggesting she was ever involved or went along with the alleged conduct. DI 1-5 at 6.

So too for Captain Castro. Mr. Clark alleges that he did not tell Captain Castro about his fourteen days in solitary confinement until "mid-April 2021." *Id.* Absent additional allegations, that gap of time makes it implausible that Captain Castro was personally involved. Therefore, we dismiss the claims against Officer Parrish and Captain Castro.

6. <u>We grant Mr. Clark leave to amend his complaint.</u>[7]

"Although leave to amend should be freely granted 'when justice so requires . . . a court may deny leave to amend when such amendment would be futile.'" *Atkinson v. Luitpold Pharms., Inc.*, 448 F. Supp. 3d 441, 452 n.9 (E.D. Pa. 2020) (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014)). We are especially aware of our responsibility to "permit a curative amendment" when reviewing pro se pleadings. *Phillips v. County of*

---

[7] Addressing Mr. Clark's other motions, we first deny his request for injunctive relief (DI 5) because his complaint does not have "a likelihood of success on the merits." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Second, Mr. Clark's motion for default judgment (DI 15) is moot because he can now amend his complaint to state a plausible claim. Finally, we are not persuaded by Mr. Clark's reasons to support staying his case. We deny his motion (DI 8, 9), but in light of his apparent concerns about receiving court filings on time, we grant him 45 days to amend his complaint.

*Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Because Mr. Clark has not amended his complaint yet, we grant him the opportunity to cure its deficiencies.  He now has 45 days to amend.

### B. We deny Mr. Clark's motion for appointment of counsel because he did not state a claim with merit.

The Third Circuit "emphasizes 'volunteer lawyer time is extremely valuable,' and 'district courts should not request counsel . . . indiscriminately.'"  *Beitler v. City of Allentown*, 2022 WL 226813, at *1 (E.D. Pa. Jan. 25, 2022) (quoting *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993)).  Courts have considered the appointment of counsel unnecessary if they dismiss a litigant's claims without prejudice.  *See, e.g.*, *Anderson v. Kauffman*, 2023 WL 1805837, at *8 (M.D. Pa. Feb. 7, 2023).  In other words, when a complaint is dismissed for failing to state a plausible claim, "arguable merit" is absent, and appointment of counsel is unwarranted.

The court in *Savage v. Carney* issued a tandem of decisions that helpfully illustrates how the Third Circuit's *Tabron* factors are applied.  2022 WL 2047951 (E.D. Pa. June 7, 2022).  In *Savage*, the court first held "there [was] no basis" at the pleadings stage "to request a volunteer lawyer" where a prisoner failed to allege the facts needed to state a claim in good faith.  *Id.* at *6.  The court granted the prisoner leave to amend his complaint to "plead who he believes, in good faith," violated his constitutional rights.  *Id.*  After the prisoner amended, the court held that he stated a plausible Eighth Amendment claim.  *Savage v. City of Philadelphia*, 2022 WL 2392041, at *8 (E.D. Pa. July 1, 2022).  Because his Eighth Amendment claim had "arguable merit in fact and law," the court held that the prisoner overcame the threshold *Tabron* inquiry, examined the remaining *Tabron* factors, and referred the prisoner's case for appointment of counsel.  *Id.* at *8-9.

Here, like the prisoner in *Savage*, Mr. Clark has another chance to bolster his allegations in an amended complaint, if the facts allow.  For this reason, it is not the right time to appoint him a lawyer.  We deny Mr. Clark's motion because his case does not have "arguable merit" as currently pled.

### VI.    Conclusion

We hold that Mr. Clark has failed to state a claim upon which relief can be granted.  We grant defendants' motion to dismiss (DI 3) without prejudice, and grant Mr. Clark leave to amend his complaint no later than **May 22, 2023**.

We deny Mr. Clark's motions for injunctive relief (DI 5) and default judgment (DI 15).  We also deny Mr. Clark's motion to stay the case (DI 8) and for appointment of counsel (DI 13).